**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**GUSTAVE AUGUSTIN, *et al*.,**

    **Plaintiffs,**

       **v.**

**ANTONY J. BLINKEN, *et al.*,**

    **Defendants.**

**Civil Action No. 23-76 (JEB)**

---

<u>**MEMORANDUM OPINION**</u>

Wishing to bring his parents to the United States, Joseph Augustin, a U.S. Citizen, filed I-130 Immigration Petitions for Alien Relatives on behalf of Plaintiffs, his Haitian-national father, Gustave Augustin, and mother, Marie Therese Gustave Chadic (Chadic), in May 2020. (To distinguish father from son and meaning no disrespect, the Court uses their first names hereafter.) As of January 2023, the U.S. Government had not yet scheduled visa-application interviews or otherwise adjudicated either Gustave or Chadic's applications beyond marking them documentarily complete. To compel the Government to act, Plaintiffs therefore filed this action against the Secretary of State and other State Department officials. The delay in their visa adjudications, Plaintiffs argued, amounts to a violation of the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 701 *et seq*.

Since then, Gustave completed his interview with a consular officer at the U.S. Embassy in Haiti, who adjudicated Gustave's application and refused it pending further processing. Chadic continues to await her consular interview. The Government now moves to dismiss, contending that Gustave's claim has since become moot because his visa has been adjudicated and that the nine-month delay in scheduling Chadic's consular interview is not unreasonable as a

matter of law.  Because the Court ultimately finds that neither Plaintiff's visa applications has

been unreasonably delayed, it will grant the Motion.

I.      **Background**

        A.   Legal Background

        For U.S. citizens seeking to bring their foreign relatives to this country, the Immigration

and Nationality Act requires that the process begin with the filing of a Form I-130 petition with

the United States Customs and Immigration Service.  See 8 U.S.C. § 1154; 8 C.F.R.

§ 204.1(a)(1), (b).  If the petition is approved, the foreign national must then go to his local U.S.

consulate to complete visa processing, which includes submitting an online Immigrant Visa and

Alien Registration Application (Form DS-260).  See 22 C.F.R. § 42.67(a)(3).  As part of this

step, the I-130 petitioner must submit processing fees, forms, and supporting documents to the

National Visa Center through the State Department's Consular Electronic Application Center,

which provides access to the case profile, processing steps, and case status.  See Immigrant Visa

Process, Dep't of State, https://perma.cc/5EJZ-ZM97.  After the NVC determines that all

preliminary steps have been accomplished, it marks the case file as documentarily complete and

works with the appropriate U.S. Embassy or Consulate to schedule an appointment for an in-

person interview.  Id.; 22 C.F.R. § 42.67(a)(3).

        After the interview, the officer must either issue the visa or refuse it.  See id. § 42.81(a).

If the latter, he "must inform the applicant of the provisions of law on which the refusal is based,

and of any statutory provision under which administrative relief is available."  9 Foreign Affairs

Manual § 504.1-3(g).  The officer need only make an initial, rather than final, determination

about an applicant's visa eligibility.  In other words, under Section 221(g) of the Immigration

and Nationality Act (INA), an officer can temporarily refuse to issue a visa in order to allow for

further administrative processing of an applicant's case if the officer needs more information or time to determine eligibility.  See 8 U.S.C. § 1201(g); U.S. Dep't of State, Administrative Processing Information, https://bit.ly/2GO3jEg.  Throughout the process, the foreign national bears the burden of establishing that he "is not inadmissible" and "that he is entitled to the . . . status claimed."  8 U.S.C. § 1361.

    B.  Factual Background

    Joseph filed I-130 petitions for his Haitian parents, Gustave and Chadic, in February 2020, both of which were approved three months later, in May 2020.  See ECF No. 1 (Compl.). ¶¶ 14–15.  With their approved I-130 petitions in hand, both Gustave and Chadic submitted their Form DS-260s to the NVC for processing.  On December 12, 2020, Gustave's application was marked documentarily complete, and on March 14, 2022, Chadic's application was marked complete as well.  See id., ¶¶ 17, 19.  For both, the next step would be to attend a visa-application interview in Haiti.

    Gustave's interview appointment eventually arrived on March 9, 2023 — more than two years after his application was marked as complete and two months after the filing of this lawsuit.  See ECF No. 8 (MTD) at 4; ECF No. 8-1 (Declaration of Bryan Lonegan), ¶ 3.  That same day, the consular officer adjudicated his visa application and refused it on the basis that he had failed to adequately establish his paternity of the petitioner, Joseph.  See Lonegan Decl., ¶ 4. Chadic, however, still has yet to receive her interview appointment over a year after her application was marked complete.  See Compl., ¶ 21.

    Both Plaintiffs therefore filed this suit in January 2023, contending that their respective delays amount to a violation of the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 701 *et seq*.  The Government now moves to dismiss.  As to Gustave, it argues that his claim is now

moot and that the consular non-reviewability doctrine bars judicial review of the consular officer's decision to refuse his visa.  See MTD at 10; ECF No. 13 (Reply) at 2–10.  For Chadic, the Government contends that the fifteen-month delay in scheduling her consular interview is not unreasonable as a matter of law.  See MTD at 11–20.

## II.   Legal Standard

Defendants' Motion to Dismiss invokes Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  When a defendant files a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff generally "bears the burden of establishing jurisdiction by a preponderance of the evidence."  Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 172–73 (D.D.C. 2020)); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).  The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  While a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a

4

right to relief above the speculative level." Id. at 555.

III.   **Analysis**

As a threshold matter, the Government contends that the Court lacks subject-matter jurisdiction over Gustave's claims because they are barred by the consular non-reviewability doctrine and therefore moot.  After explaining why it disagrees, the Court will then turn to whether either Plaintiff's unreasonable-delay claim should be dismissed on the merits.

A.   Subject-Matter Jurisdiction

The D.C. Circuit has explained that "[c]onsular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (citing Saavedra Bruno v. Albright, 197 F.3d 1153, 1159 (D.C. Cir. 1999)).  This is so because such decisions "may implicate relations with foreign powers or involve classifications defined in the light of changing political and economic circumstances and, accordingly, such judgments are frequently of a character more appropriate to either the Legislature or the Executive."  Id. (quoting Trump v. Hawaii, 138 S. Ct. 2392, 2418–19 (2018)) (internal quotation marks and alterations omitted).  Under the INA, consular officers have "exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations," Saavedra Bruno, 197 F.3d at 1156, and they also decide whether "to grant, deny or revoke any visa."  Baan Rao, 985 F.3d at 1024 (citing Saavedra Bruno, 197 F.3d at 1156-57).

Courts in this district, including this one, however, have explained that the doctrine of consular non-reviewability precludes review only of "final visa determinations" and "does not apply to challenges regarding decisions that are not yet final."  Joorabi v. Pompeo, 464 F. Supp. 3d 93, 100 (D.D.C. 2020); Shen v. Pompeo, No. 20-1263, 2021 WL 1246025, at *3 (D.D.C.

Mar. 24, 2021) ("[T]he doctrine of consular non-reviewability does not apply where the government has not made a final visa decision."); see Sawahreh v. U.S. Dep't of State, 630 F. Supp. 3d 155, 159–60 (D.D.C. 2022).  Cases in administrative processing "have not been finally refused," Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry, 168 F. Supp. 3d 268, 292 (D.D.C. 2016), and are therefore subject to judicial review for undue delay.  Ibrahim v. U.S. Dep't of State, No. 19-610, 2020 WL 1703892, at *5 (D.D.C. Apr. 8, 2020); Shen, 2021 WL 1246025, at *4–5.

The Government argues that consular non-reviewability applies to Gustave's claims because his "visa refusal was a final decision," Reply at 4, under "INA 221(g) . . . due to [Gustave]'s failure to establish his paternity of the visa petitioner."  Id. at 5.  It contends that this suit thus asks the Court to "review . . . the consular officer's decision to deny the visa," id., which is categorically proscribed by Baan Rao.

This Court, however, has previously observed that the State Department "itself . . . has acknowledged that applications in administrative processing are listed as 'refused' on" the State Department website, as Gustave's application is so marked, despite the fact that they may be subject to additional administrative processing.  See Sawahreh, 630 F. Supp 3d at 160 (citing U.S. Dep't of State, Visas: CEAC Case Status Change (March 5, 2020), https://perma.cc/JL3W-QHSV (Status Change Memo)); see also ECF No, 8-2, Exh. A (Gustave Visa Status).  Gustave urges that that is precisely the situation here, noting that after his consular interview he was told "he had failed to establish a valid parent-child relationship" and that the normal process in such a situation would be for his application to be "held in administrative processing while the consular post makes a request for additional information" to support the claimed relationship.  See Opp. at 5.

The only available record evidence thus indicates that Gustave's application remains in

administrative processing.  In such a circumstance, this Court has previously held that it would

be inappropriate for the Government to be able to "'unsubscribe' from judicial review of cases in

administrative processing for unreasonable delay by simply changing" an applicant's status on

the State Department's website.  See Meyou, 2022 WL 1556344, at *2; Giliana, 2022 WL

910338, at *2; Ibrahim, 2020 WL 1703892, at *5.  The Court will therefore turn to the merits of

both applicants' unreasonable-delay claims.

     B.  Unreasonable Delay

     On this issue, the Government fares better, as the Court agrees that neither applicant has

shown that the delays in the processing of their visa applications is unreasonable.  As a reminder,

Gustave's application was marked documentarily complete approximately 30 months ago, and he

had his consular interview in Haiti, during which his application was refused, approximately four

months ago.  Regardless of how his waiting time is calculated, it falls short of what courts have

found to be unreasonable.  Chadic's application has similarly been complete and pending a

consular interview for approximately 15 months.

     To evaluate the reasonableness of agency delay under APA § 701, the Court examines six

factors set out in Telecommunications Research & Action Center v. FCC (TRAC), 750 F.2d 70

(D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a
> rule of reason;
> (2) where Congress has provided a timetable or other indication of
> the speed with which it expects the agency to proceed in the enabling
> statute, that statutory scheme may supply content for this rule of
> reason;
> (3) delays that might be reasonable in the sphere of economic
> regulation are less tolerable when human health and welfare are at
> stake;
> (4) the court should consider the effect of expediting delayed action
> on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of

> the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency
> lassitude in order to hold that agency action is unreasonably delayed.

Id. at 80 (internal quotations, citations, and emphasis omitted); see also Mashpee Wampanoag

Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003).  These six factors "are not

'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency

delay.'"  In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting TRAC, 750

F.2d at 80).  "Each case must be analyzed according to its own unique circumstances[,]" as each

"will present its own slightly different set of factors to consider."  Air Line Pilots Ass'n, Int'l v.

Civil Aeronautics Board, 750 F.2d 81, 86 (D.C. Cir. 1984).  Whether a delay is unreasonable

"cannot be decided in the abstract, by reference to some number of months or years beyond

which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the

complexity of the task at hand, the significance (and permanence) of the outcome, and the

resources available to the agency."  Mashpee, 336 F.3d at 1102.

It is appropriate to resolve this issue at the motion-to-dismiss stage because "this record

contains enough facts to evaluate the TRAC factors now."  Sarlak v. Pompeo, No. 20-35, 2020

WL 3082018, at *5 (D.D.C. June 10, 2020) (collecting cases and evaluating TRAC factors on

motion to dismiss); see also Dastagir v. Blinken, 557 F.Supp.3d 160, 163–64 (D.D.C. 2021);

Zandieh v. Pompeo, No. 20-919, 2020 WL 4346915, at *5 (D.D.C. July 29, 2020).

The considerations contemplated by the TRAC factors can be grouped into four basic

inquiries here.  "First, is there any rhyme or reason — congressionally prescribed or otherwise

— for [an agency]'s delay (factors one and two)?  Second, what are the consequences of delay if

the Court does not compel the [agency] to act (factors three and five)?  [Third], how might

forcing the agency to act thwart its ability to address other priorities (factor four)?"  Ctr. for Sci.

in the Pub. Int. v. United States Food & Drug Admin., 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

> ### 1.    TRAC *Factors 1 and 2*

The first two <u>TRAC</u> factors favor Defendants.  These appraise "whether the agency's

response time complies with an existing specified schedule and whether it is governed by an

identifiable rationale."  <u>Ctr. for Sci. in the Pub. Int.</u>, 74 F. Supp. 3d at 300.  Congress has not

supplied a rule of reason by imposing a statutory deadline on considering visa applications, so

the Court "turn[s] to case law as a guide" to the content of the rule applicable here.  <u>Milligan v.</u>

<u>Pompeo</u>, 502 F. Supp. 3d 302, 318 (D.D.C. 2020) (<u>Milligan I</u>) (quoting <u>Sarlak</u>, 2020 WL

3082018, at *6).  It recognizes that "Congress has given [the State Department and other

agencies] wide discretion in the area of immigration processing."  <u>Id.</u> (quoting <u>Skalka v. Kelly</u>,

246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)) (alteration in original).  While "[t]here is 'no *per se*

rule as to how long is too long' to wait for agency action," <u>In re Am. Rivers & Idaho Rivers</u>

<u>United</u>, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting <u>In re Int'l Chem. Workers Union</u>, 958 F.2d

1144, 1149 (D.C. Cir. 1992)), "[d]istrict courts have generally found that immigration delays in

excess of five, six, seven years are unreasonable, while those between three to five years are

often not unreasonable."  <u>Sarlak</u>, 2020 WL 3082018, at *6 (citation omitted) (collecting cases).

Given that the delays here are only 30 months for Gustave and 15 months for Chadic, it remains

on the reasonable side of that line.

As the Government's Motion points out, furthermore, "significant protests, political and

civil unrest, [and] natural disasters . . . in Haiti . . . have contributed to the backlog of visa cases in

recent years, as well as unavoidable staffing shortages that followed as a result."  Reply at 18 (citing

MTD at 10–14, 17–20).  These events — including a 7.2 magnitude earthquake in August 2021, civil

unrest following the assassination of Prime Minister Moise in July 2021, and the closure of USCIS's

Haiti field office in Port-au-Prince in 2019 — have led to significant operational impacts on the U.S. Embassy, "most notably [on] the retention of State Department staffing at the U.S. Embassy." Id. The State Department, not this Court, is best situated to make decisions about resource allocation in response to these challenges. See Dastagir, 557 F. Supp. 3d at 166 ("Issues like a pandemic and local government restrictions are out of the control of the Government and are justifications for delay that the Court is ill-equipped to second guess."). In sum, "[t]hese  circumstances offer sufficient 'rhyme [and] reason' to explain the Government's response time." Id.

For their part, Plaintiffs attempt to undermine the role of the pandemic and instability in Haiti in slowing Government action. See Opp. at 16. In doing so, they paradoxically rely on the fact that Gustave had his consular interview in March 2023, which Plaintiffs argue provides "clear evidence that in spite of the civil unrest, natural disasters, and other general country conditions, which Defendants reference as a justification for their delay, Defendants were able to schedule him for an interview." Id. As the Government rightly points out, however, the State Department did not assert that it was wholly unable to process visa applications during this time period, and the timeline of Gustave's interview is "actually consistent with the nature of the delays that Defendants have been describing, given that [Gustave's] visa case was documentarily qualified over fifteen months before Chadic's visa case was." Reply at 19.

In light of these conditions and the lack of any evidence that the State Department has acted unreasonably in response, the first two TRAC factors weigh in the Government's favor.

### 2.    TRAC *Factors 3 and 5*

The third and fifth TRAC factors, which look to the effects of agency delay, tip the other way. These factors weigh "the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay." Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005). The Government's delay harms not only Plaintiffs by

deferring final adjudication of their immigrant visas but also their U.S.-citizen child and sponsor for the visa.  The Government's primary rebuttal — namely, that the Court can remedy these harms only at the expense of other applicants, <u>see</u> Reply at 20 — is an "argument[] about the effects of expediting delayed action on other priorities," which "go[es] to the heart of the fourth factor, not the third and fifth."  <u>Milligan v. Blinken</u>, No. 20-2631, 2021 WL 3931880, at *8 (D.D.C. Sept. 2, 2021) (<u>Milligan II</u>).  "[T]he nature of [Plaintiffs'] interests and the prejudice to those interests from delay in processing" their visas therefore weigh in their favor.  <u>Tate v. Pompeo</u>, 513 F. Supp. 3d 132, 150 (D.D.C. 2021).

　　　　　*3.*　　TRAC *Factor 4*

　　　　The fourth factor examines "the effect of expediting delayed action on agency activities of a higher or competing priority," <u>TRAC</u>, 750 F.2d at 80, and "carries the greatest weight in many cases."  <u>Milligan I</u>, 502 F. Supp. 3d at 319.  It does so here as well and lands in the Government's column.  The Plaintiffs' applications are delayed because of "resource-allocation decisions" that "do not lend themselves to judicial reordering[s] [of] agency priorities."  <u>Id.</u> (quoting <u>Bagherian</u>, 442 F. Supp. 3d at 96) (internal quotation marks omitted and alterations in original).  "This Circuit has refused to grant relief, even [though] all the other factors considered in <u>TRAC</u> favored it, where a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain."  <u>Id.</u> (quoting <u>Mashpee</u>, 336 F.3d at 1100) (internal quotation marks omitted and alterations in original).

　　　　Plaintiffs' request for expediting their applications would have this Court do just that. Their Complaint asks it to compel Defendants to "adjudicate Plaintiffs' Applications immediately."  Compl. at 8.  "[T]he very premise of [this request] is that there is a backlog of visa applicants and that [Plaintiff] should be prioritized for processing ahead of others."

Milligan II, 2021 WL 3931880, at *9.  Rather than avoid this conclusion, Plaintiffs simply

contend without support that if "there is any queue here in the [G]overnment's system,

[Plaintiffs] should certainly be at the front of such a queue" given the length of time they have

been waiting.  See Opp. at 18.  That assertion, however, does not grapple with the fact that

Plaintiffs' request here boils down to a request that they "should be prioritized for processing

ahead of others."  Milligan II, 2021 WL 3931880, at *9.  "Courts have routinely held that

compelling an agency to reorder a line of applicants without any net gain would impermissibly

interfere with the agency's unique and authoritative position to view its projects as a whole,

estimate the prospects for each, and allocate its resources in the optimal way."  Id. (citing Didban

v. Pompeo, 435 F. Supp. 3d 168, 176 (D.D.C. 2020)) (internal quotation marks and alterations

omitted); see also Tate, 513 F. Supp. 3d at 150 ("While the effect of an individual case would be

minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of

the line would erode the ability of agencies to determine their priorities.").  This factor thus also

weighs against Plaintiffs.

> 4. TRAC *Factors 6*

The final TRAC factor considers whether the agency's bad faith caused the delay.

Plaintiffs' Complaint does not allege that a decision on their applications was delayed

intentionally or was the result of any impropriety.  See generally Compl.  Therefore, "the good

faith of the agency in addressing the delay weighs against equitable relief."  Milligan I, 502 F.

Supp. 3d at 319 (internal quotation marks omitted).

*       *       *

The balance of these factors tilts against the Court's intervention in this case.  See Sarlak,

2020 WL 3082018, at *6 (collecting cases where courts, "[t]aking the [TRAC] factors as a

whole," found no unreasonable-delay claim).  Although this delay has undoubtedly harmed Plaintiffs, who have waited a considerable time to obtain their visas and join their U.S.-citizen son in the United States, the rule of reason supplied by the caselaw, judicial deference to agency priority-setting, and the absence of bad faith all suggest that the delay is not yet unreasonable. The Court nonetheless "recognizes that the delay is substantial and imposes hardship on Plaintiff[s], and it encourages the Government to act on the application[s] as soon as possible." Didban, 435 F. Supp. 3d at 177.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  July 14, 2023